Christian, J.,
delivered the opinion of the court.
This is an appeal from a decree of the circuit court of Boanoke county.
The suit was commenced by a bill in equity filed by Henry A. Edmondson and Henry E. Blair, trustees in certain deeds of trust’ executed by George W. Shanks, by which he conveyed to said trustee certain real and personal estate for the benefit of his creditors. Said deed specified certain debts and liabilities of said George W. Shanks as “embracing all then recollected” by the grantor, but provided that the said trustees should, “ as any money should be received by them” (from the sales of property therein conveyed), “pay the same rateably and in equal proportion according to the amounts, in discharge of all debts and liabilities against the said George W. Shanks, whether the said debts or liabilities are or are not specifically mentioned in this deed, together with all interest that may lawfully be due on said debts and liabilities.”
*806 The object of the bill filed by the trustees seems to* be twofold: First, to have an account taken of all the- and liabilities of the said George W. Shanks, an(j to eonyene ap creditors before a commissioner ^or t^iat PurPose< Second, to have removed what the trustees considered a cloud upon the title to a part of' the real estate conveyed by Shanks, and. which, in their opinion, would seriously affect the price, if sold under the uncertainty then existing as to the claim of his wife asserted against his creditors in respect to part of said real estate.
This claim of Lucy Shanks, the wife of George W.. Shanks, is founded upon the following state .of facts, proved in the record, and which presents the only question we have to determine: Some time before the year 1842, Andrew Lewis died intestate, seized and. possessed of considerable real and personal estate.. His wife, Maria Lewis, qualified as his administratrix. After the payment of intestate’s debts, there remained* in her hands, of his personal estate, a considerable sum of money for distribution among herself and his children, of whom there were three—Mary, who intermarried with Henry A. Edmondson, Lucy, who intermarried with George W. Shanks, and William W., Lewis.
With this fund remaining in her hands as administratrix (together with a certain sum borrowed from William Walton) Mrs. Lewis purchased a tract of' land lying in the county of Roanoke, containing eight hundred and seventy-four and a quarter acres, and took a conveyance of the title to herself. Some timeafterwards, to wit, on the 17th day of January 1842,. an “indenture made between Maria Lewis, William W. Lewis and Henry A. Edmondson and Mary his wife, of the one part, and George W. Shanks, of the- *807 other part,” after reciting the fact that the land purchased by Mrs. Maria Lewis, and conveyed to her by Samuel Strickler, was so purchased by money belonging to the estate of her husband, and in her hands as his administratrix, together with a certain sum borrowed by her of William Walton, Sr., contained, among other recitals, the following:
. “And whereas the said Maria Lewis, having legal title to the whole of the residue of the said tract of land, and the said Geo. W. Shanks and Lucy, his wife, Wm. W. Lewis and Henry A. Edmondson and Mary, his wife, having equitable interests therein, the said parties have made an arrangement by which the title to said land may be adjusted; and, whereas the said Maria Lewis has undertaken to settle with the said Wm. Walton, Sen’r, the amount due him for money loaned as above mentioned, for the purpose of purchasing the said land, in consideration whereof the other parties to this indenture are willing that the said Maria Lewis shall retain to her own use and behoof, the one undivided moiety or half part of said land; and, whereas the said George W. Shanks hath purchased of the said Maria Lewis her interest in the remaining undivided moiety of. the said residue, whether vesting in her as widow of the said A. Lewis, dec’d, or otherwise, and hath purchased of the said Wm. W. Lewis and of the said Henry A. Edmondson and Mary, his wife, their respective interests, present and reversionary, legal and equitable, in the said remaining undivided moiety or half part of the said residue; now, in order to. effectuate the intentions of the parties aforesaid, in consideration of the premises and of the sum of five dollars by the said George W. Shanks paid to the said Maria Lewis, Wm. W. Lewis, and Henry A. Edmondson and Mary his wife, before the *808 sealing and delivery of these presents, this indenture witnesseth, that the said Maria Lewis, Wm. W. Lewis and Henry A. Edmondson and Mary, his wife, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto the said George W. Shanks, his heirs and assigns, the above described remaining undivided moiety or half part of the said residue of'or half part the said tract of land, which residue remains after the sale of the said portion of one hundred and twenty-seven acres off from the original tract of eight hundred and seventy-four and a half acres above mentioned. To have and to hold the same to him, the said George W. Shanks, and his heirs and assigns, to the only proper use¡and behoof of him, the said George W. Shanks, and his heirs and assigns forever.”
This deed was signed by Maria Lewis, William W. Lewis, Henry A. Edmondson, Mary A. Edmondson and George -W. Shanks; but was not signed by Lucy, the wife of George W. Shanks. The land conveyed by this deed is the same land which was conveyed by Shanks to Blair and Edmondson, trustees, by deed bearing date 15th June, 1872, first above referred to.
To the bill filed by the trustees calling upon the court to adjudicate the rights arising between Mrs. Shanks and the creditors of her husband, she filed her answer, in which she alleges that the purchase of the land in the bill mentioned was made by Mrs. Maria Lewis in the year 1830, and she asserts that she was married to her husband, George W. Shanks, on the -day of January 1838, so that her interest had been converted and become real estate, and was real estate at the time of her marriage, and the only interest that her husband took in her portion of the real estate was a life estate, with remainder in fee to this *809 respondent, and even if, as claimed by some of the creditors, this respondent’s interest in the land was ■derived by the investment of personal assets in real ■estate, before it could be taken as her husband’s absolute estate, it would have to be reached through a court -of equity; and such a court would do it only upon terms of making an equitable settlement upon this respondent. But respondent insists, that at the time ■of her marriage her estate was real in her portion of the one-half of the Bellevue estate, in which she has a remainder in fee after the termination of her husband’s life estate, and that all that this court will now sell is her husband’s life estate. And further answering, respondent says that she is advised that even if her mother, Mrs. Maria Lewis, had invested her personal estate in real estate, and took the deed to herself, respondent claims that she held the land as an. implied trustee for respondent. And respondent has the right to elect to take it as real or personal estate, and she has elected as far as she could, and still does desire ■and elect to hold it as real estate, and asks this court to protect her interests.
The circuit court of Roanoke held, by its decree of the 14th July 1874, that the said Lucy Shanks has •no interest in the real estate conveyed by her husband to the complainants as trustees by deed of 15th June 1872, except a right of dower therein, contingent upon her surviving her said husband.
Prom this decree Mrs. Shanks obtained an appeal, awarded by one of the judges of this court.
The question we have to determine is, “ what interest does Mrs. Lucy Shanks (the appellant) take in the'land conveyed by her husband to Edmondson and Blair, trustees ?” Has she only a contingent right of dower, as declared by the circuit court, or has she title to one- *810 third of one moiety of the land subject only to her-husband’s rights as tenant by the curtesy? This depends upon the nature and character of the estate she¿er|ve(j from her • father, and whether it was real or Per80na,l estate at the time of her marriage. The conceded facts in the case show that Mrs. Maria Lewis, the mother of the appellant, was the administratrix of her husband, Andrew Lewis, and that as such administratrix she having in her hands, after payment of his debts, a considerable sum of money, invested the same in certain real estate in the county of Boanoke, taking from the vendor a deed, conveying the title to herself. This deed was made in the year 1880. Mrs. Shanks was married in the year 1838. In 1842, the deed above referred to between Mrs. Lewis an.d her children' and sons-in-law, was executed. Now, up to the time of* this deed, the children of Mrs. Lewis had a claim upon her as administratrix of her husband (and their father, Andrew Lewis,) for the money which came into her hands as administratrix. She having invested that money in real estate, it was certainly competent for them, if they elected so to do,, to accept the land in lieu of the money due them, and if they chose so to do, could have compelled a division of the land among them (if it was susceptible of such division), and each one have taken his or her portion of the land, and given an acquittance' to the administratrix of all claim-against heron account of the money collected and invested by her. If' this had been done before the marriage of Mrs. Shanks, or even afterwards by the husband and wife conjointly, then Mrs. Shanks’ interest, as well as that of' all the children of Andrew Lewis, would have been an interest in real estate, and she could have held the-same against her husband’s creditors. But no such, *811 division of said land was made; but the recitals in the deed show that the parties to that deed regarded the land as representing the money which was in the hands of the administratrix. There is nothing to show in the record, nor is it claimed in argument here, that Mrs. Shanks, before marriage, and.after infancy, made her election to take her interest,in the land in which her mother, as administratrix of her father, had invested the money in her hands. It is neither alleged nor proved that there was any election on the part of Mrs. Shanks before marriage. Indeed no such election could have been made before marriage, because she was then an infant, having married before she arrived at twenty-one years of age. The recital in the deed that Shanks and wife had “ an equitable interest” in said land, is plainly only a declaration that they had such an interest in equity as against the legal title of Maria Lewis as a court of equity would uphold upon the doctrine of resulting trusts, and hold the land bound for the money belonging to the estate of Andrew Lewis, and which she had invested. This recital cannot be held as proof of an election on the part of Mrs. Shanks, especially as she was then a married woman and incapable of making an election. See Siter, Price & Co. v. McClanachan & als., 2 Gratt. 280, 296; Pratt v. Taliaferro, 3 Leigh 419. After marriage the election could only be made by the husband and wife conjointly. In this case the election was made by the husband alone. And he having complete dominion and control of the subject, his election would enure to his sole benefit, unless it be shown that such election was made for himself and wife jointly. 2. Gratt. 296.
In this case all inferences, which might be drawn from the recital of the deed, are rebutted and ex-' *812 plained from the fact that in the deed relied on, the land is conveyed to George W. Shanks, “to have and to hold the same to him, his heirs and assigns, to the only proper use and behoof of them, the said George ®hanks an(l hi8 heirs and assigns forever.” It thus appears that there was no election on the part of Shanks, the husband, to hold the land in behalf of himself and wife, but on the contrary, he had the title conveyed to himself; which excludes the idea of any election on behalf of himself and wife conj'ointly.
The legal principles governing this case are well settled, and clearly defined by the decisions of this court, as well as by the recognized rules of courts of equity, and may be briefly and succinctly stated as follows:
1. Where money belonging to another is invested in real estate, and the title is conveyed to the party using the money not his own, such real estate will be held, upon the doctrine of resulting trusts, to be in the hands of the grantee as a trustee for the party whose money has been appropriated.
2. Such party, whose money is so appropriated, may, at his election, either claim the money, and go against the land as security for its payment, or he may claim the land itself, if he elects so to do; and a court of equity will, upon such election being distinctly shown, by a person sui juris, decree to such person the land in the place of the money which purchased it.
3. A wife during coverture has no power to make such election. But the husband may, in behalf of himself and wife, make such election, when it appears that he acted for his wife, or for himself and wife conjointly.
4. The election to hold such real estate, either by a person sui juris, or by a married woman, made by her *813 husband in her behalf, or conjointly with himself, must be plainly and distinctly proven, and cannot be left to mere inference, unless such inference is so strong from all the circumstances as to be equivalent to positive proof of a clear intention so to elect.
See Siter, Price & Co. v. McClanachan, 2 Gratt. 280; Pratt v. Taliaferro, 3 Leigh, 419; Commonwealth v. Martin’s ex’ors, 5 Munf. 117, 128; Harcum’s adm’r & als v. Hudnall, 14 Gratt. 369, 378, 379; Thornton v. Thornton, 3 Rand. 179; Craig v. Leslie, 3 Wheat. R. 563, 578, 585, 586; 2 Story’s Eq., § 1210, 1211; 1 Lead. Cas. in Eq., pt. 1st, vol. 1st, 335 to 342; lb. § 793.
Applying these principles to the case before us, it is clear: 1, That no election was made by Mrs. Shanks before marriage; and 2, That no election was made by George W. Shanks on behalf of himself and wife; hut on the contrary, the fact that he took the deed to himself repels the presumption that might otherwise possibly arise from the recitals in the deed, and conclusively shows that he elected to take for himself that which the law gave him by virtue of his marital rights.
It is clear upon the facts in this case, that upon the marriage of Lucy Lewis with George W. Shanks, she having made no election, had no interest in the real estate held by her mother as real estate, but only a claim upon her mother as administratrix for her proportion of the money which she was entitled to receive as one of the distributees of her father’s estate. This was upon her marriage nothing more than a chose in action, which, upon a reduction into possession,, belonged to her husband. The adjustment made by the deed before referred to between Mrs. Maria Lewis and her children and son-in-law was, upon the part of *814 George W. Shanks, a reduction into possession of the chose in action, which consisted of a claim on the part of his wife against her mother, as administratrix of her for a certain amount of money received by her as SQCh administratrix, and in her hands for distribution. George W. Shanks being a party to that deed, the claim against Mrs. Lewis was thereby extinguished, and such extinguishment will be held to be a reduction into possession by Shanks, to such an extent as to ' clothe him with the absolute property as against any claim of his wife, and must be subjected to the claims of his creditors, and passed to his trustees, Edmond-son and Blair, by the deed of the 15th day of June 1872.
The court is therefore of opinion, that the decree of the circuit court of Roanoke county, which declares “ that Lucy Shanks has no interest in the real estate conveyed by her husband, George W. Shanks, by the deed dated the 15th June 1872 to the complainants as trustees, except a right of dower therein contingent upon her surviving her said husband” is not erroneous, and that the same be affirmed. . <■
Decree arrirmed.